**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
UNITED STATES OF AMERICA      :
                              :  CRIMINAL ACTION
         vs.                  :
                              :  NO. 01-512-05
ANDRE COOPER                  :
```

**MEMORANDUM AND ORDER**

JOYNER, J.                                    April   26  , 2021

  Defendant Andre Cooper seeks early, compassionate release from his incarceration at FCI Cumberland under multiple consecutive sentences of life without possibility of release, among others.  For the reasons which follow, Mr. Cooper's Motion is DENIED.

## History of the Case

  The background behind Andre Cooper's incarceration is particularly disturbing.  Between 1996 to 2002, when he was between 17 and 23 years of age, Defendant was an active member of a group known as the "Boyle Street Boys," a cocaine manufacturing and distribution enterprise which operated out of and primarily in and around the Highland Gardens section of Chester, Pennsylvania.  In furtherance of this network, the Boyle Street Boys utilized extremely violent tactics to control

1

their lesser, younger members and street-level salespeople and to protect what they perceived to be their "turf" for cocaine sales and distribution.  In addition to illegally purchasing and possessing a large cache of firearms and manufacturing and distributing vast amounts of cocaine, the Boyle Street Boys murdered 4 people in furtherance of their enterprise, one of whom was a cooperating federal witness.  Defendant Cooper committed one of these murders himself and actively conspired, assisted, and participated in the planning and execution of the others.

Defendant was one of eight individuals named in a 44-count indictment charging multiple counts of, *inter alia*, racketeering, conspiracy to distribute and distribution of cocaine, conspiracy to distribute and distribution of cocaine within a school zone, conspiracy to murder, conspiracy to murder a federal witness, murder, aiding and abetting, and using and possessing a firearm during and in relation to crimes of violence and in furtherance of drug trafficking crimes.  He was arrested in early 2003 and held without bail pending trial, and the Government subsequently obtained authorization to seek the death penalty. The Defendant, along with his co-defendants was tried over a period of some 5 ½ months beginning in January, 2006.  Although he was spared the death penalty, Defendant was convicted of nearly all of the charges against him and sentenced

to three terms of life imprisonment without possibility of release to run consecutively to one another, one term of life imprisonment to run concurrently and 9 terms of 10 years each of imprisonment also to run concurrently.  Defendant's judgment and sentence were affirmed by the U.S. Court of Appeals for the Third Circuit in August, 2009.  Since that time, Defendant has filed numerous motions to vacate his sentence, re-open his case and for habeas corpus relief, all of which have been denied and those decisions denying relief have been affirmed on appeal.

By the motion which is now before us, Defendant asserts that he is an appropriate candidate for early release as a consequence of his undiagnosed medical conditions and the threat posed to his health by the ongoing coronavirus pandemic. Specifically, Defendant alleges that he suffers from a history of periodic episodes of chest pain and rapid heartbeats, and swelling of the left breast area and that these undiagnosed conditions put him at an increased risk of severe illness should he be diagnosed with COVID-19.  (Defendant's Emergency Motion for Compassionate Release/Sentence Reduction [Doc. No. 1131] at pp. 6-7). In further support of his motion, Defendant asserts that he is now and has shown that he is remorseful for the crimes he committed, "is truly sorry for the pain that [he's] caused a lot of people in the community" and that while in prison, he has "shown compelling evidence of rehabilitation."

(Def's Emergency Motion,  pp. 3, 6).  Thus, Defendant argues, he "is not a danger to any other person or the community," and the reduction of his sentence "is consistent with the ends of justice, as his continued incarceration is not necessary to protect the public safety, promote justice and deter further criminal acts."  (Def's Emergency Motion, p.6).

In response, the Government notes that while Defendant's medical records do reflect that he suffers from hypertension and obesity, he does not claim these ailments as a basis for relief and in any event, his health issues are not particularly remarkable.  In addition, Defendant was offered but refused a COVID-19 vaccine.  The Government argues that Defendant has served just 217 months of his life sentences and that while he has only had one disciplinary infraction during his period of incarceration, consideration of the factors outlined in 18 U.S.C. Section 3553(a) show that he should not be released as he remains a threat to the safety of the community.

**Legal Standards Applicable to Compassionate Release Motions**

Defendant moves to reduce his sentence pursuant to the "compassionate release" provisions of 18 U.S.C. Section 3582(c)(1)(A).  That section provides:

**(c) Modification of an imposed term of imprisonment.** The court may not modify a term of imprisonment once it has been imposed except that –

(1)      in any case –

4

(A)   the court, upon motion of the Director of the
Bureau of Prisons, or upon motion of the
defendant after the defendant has fully exhausted
all administrative rights to appeal a failure of
the Bureau of Prisons to bring a motion on the
defendant's behalf or the lapse of 30 days from
the receipt of such a request by the warden of
the defendant's facility, whichever is earlier,
may reduce the term of imprisonment (and may
impose a term of probation or supervised release
with or without conditions that does not exceed
the unserved portion of the original term of
imprisonment), after considering the factors set
forth in section 3553(a) to the extent that they
are applicable, if it finds that –

(i)    Extraordinary and compelling reasons
warrant such a reduction; or

(ii)   the defendant is at least 70 years of age,
has served at least 30 years in prison,
pursuant to a sentence imposed under
section 3559(c), for the offense or
offenses for which the defendant is
currently imprisoned, and a determination
has been made by the Director of the
Bureau of Prisons that the defendant is
not a danger to the safety of any other
person or the community, as provided under
section 3142(g);

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission; …

The factors to which consideration must be given are, as
noted above, set out in Section 3553(a) of Title 18 of the
United States Code and include:

(1) the nature and circumstances of the offense and the
history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the
seriousness of the offense, promote respect for the law,
provide just punishment, to afford adequate deterrence to

criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant…

(5)  any pertinent policy statement issued by the Sentencing Commission … in effect on the date the defendant is sentenced;

(6)  the need to avoid unwarranted sentence disparities between defendants with similar records convicted of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1)-(7).

The applicable policy statement for "Reduction in Term of Imprisonment Under 18 U.S.C. Section 3582(c)(1)(A)" is set forth in Section 1B1.13 of the U.S. Sentencing Guidelines.[1]  It reads as follows:

---

[1] Prior to the passage of Section 603(b) of the First Step Act of 2018, a prisoner's only avenue to an early "compassionate" release from incarceration was through a motion filed by the Director of Prisons on his or her behalf. The 2018 Act expanded the availability of the compassionate release process by allowing defendants to directly petition the district courts for a reduction of sentence. United States v. Bayron, No. 95-CR-338-01, 2021 U.S. Dist. LEXIS 29846, at *4, 2021 WL 632677, at *2 (E.D. Pa. Feb. 18, 2021)(citing United States v. Rodriguez, 451 F. Supp. 3d 392, 395 (E.D. Pa. 2020); United States v. DuBois, No. 04-CR-680-06, 2021 U.S. Dist. LEXIS 29848, at *5, 2021 WL 632679, at *2 (E.D. Pa. Feb. 18, 2021).  The policy statement at issue here and which is articulated in U.S.S.G. Section 1B1.13, however, has not been updated in response to the 2018 Act and thus there is no policy statement of the Sentencing Commission applicable to motions for compassionate release filed by defendants under the First Step Act.  Bayron, 2021 U.S. Dist. LEXIS at *5 - *6.  We agree with our colleagues Judge Brody and Judge Schiller, among others, that while the Sentencing Commission's outdated policy statement offers helpful guidance for a Court's assessment of

> Upon motion of the Director of Prisons under 18 U.S.C. Section 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. Section 3553(a), to the extent that they are applicable, the court determines that –
>
> (1)
>
> > (A)  extraordinary and compelling reasons warrant the reduction; or
> >
> > (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. Section 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. Section 3142(g); and
>
> (3)  the reduction is consistent with this policy statement.

Among the examples given in the Commentary to the Policy Statement as to what may constitute "extraordinary and compelling" reasons warranting a reduction in sentence are: terminal illness, serious physical or medical condition, serious functional or cognitive impairment, deteriorating physical or mental health because of age or the aging process "which substantially diminishes the ability of the defendant to provide

---

extraordinary and compelling reasons for release, it does not preclude us from considering other reasons which a defendant might raise on a motion for compassionate release which are not specifically contemplated in the policy statement. Bayron, 2021 U.S. Dist. LEXIS at *8(citing United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020)); Rodriguez, 451 F. Supp. 3d at 395, 397-400.

self-care within the environment of a correctional facility and from which he or she is not expected to recover," as well as various family circumstances such as could arise from the death or incapacitation of the caregiver of a defendant's minor child or children, or the incapacitation of a defendant's spouse or registered partner when the defendant would be the only available caregiver for that person.  "Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason."  (U.S.S.G. Section 1B1.13, 18 U.S.C.A., Commentary Application Notes 1(A) – (C), 3).

Finally, Section 3142(g) prescribes the following factors to be considered in determining the detention/continued detention or release of an individual:

(1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 U.S.C. Section 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including –

(A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)   whether, at the time of the current offense or
arrest, the person was on probation, on parole,
or on other release pending trial, sentencing,
appeal, or completion of sentence for an offense
under Federal, State, or local law; and

(4)   the nature and seriousness of the danger to any person
or the community that would be posed by the person's
release.   In considering the conditions of release
described in subsection (c)(1)(B)(xi) or
(c)(1)(B)(xii) of this section, the judicial officer
may upon his own motion, or shall upon the motion of
the Government, conduct an inquiry into the source of
the property to be designated for potential forfeiture
or offered as collateral to secure a bond, and shall
decline to accept the designation, or the use as
collateral, of property that, because of its source,
will not reasonably assure the appearance of the
person as required.

In summary then, a sentencing court may only reduce a

defendant's sentence under Section 3582(c)(1)(A) if the

following four conditions are satisfied: (1) the inmate has

exhausted his administrative rights to appeal with the Board of

Prisons or 30 days have passed since the submission of a request

to the warden to petition the Bureau of Prisons to file a

compassionate release motion on the inmate's behalf, whichever

is earlier; (2) the court finds that extraordinary and

compelling reasons warrant a sentence reduction; (3) the court's

reduction would be consistent with any applicable policy

statements issued by the Sentencing Commission; and (4) the

proposed reduction would be consistent with the sentencing

factors outlined in 18 U.S.C. Section 3553(a).   United States v.

Georgiou, Crim. A. No. 09-088, 2021 U.S. Dist. LEXIS 55245, *11,
2021 WL 1122630 (E.D. Pa. March 23, 2021)(citing United States
v. Brown, 13-cr-176-05, 2020 U.S. Dist. LEXIS 90187, 2020 WL
2615616, at *1 (E.D. Pa. May 22, 2020)); United States v.
Trippett, Crim. A. No. 12-632-01, 2021 U.S. Dist. LEXIS 41449 at
*6, 2021 WL 847155 (E.D. Pa. March 5, 2021). See also, United
States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) and United
States v. Sparrow, No. 20-2674, 2021 U.S. App. LEXIS 6022, 2021
WL 796411 (3d Cir. March 2, 2021)(per curiam)(both noting
importance of strict compliance with exhaustion requirement).
Through it all, a defendant has the burden of establishing
circumstances warranting his release. United States v. Cabrera,
Crim. A. No. 18-304-01, 2021 U.S. Dist. LEXIS 21833 at*9, 2021 WL
411502 (E.D. Pa. Feb. 5, 2021); United States v. Neal, Crim. Nos.
08-cr-0628, 10-cr-0685, 2020 U.S. Dist. LEXIS 187749 at *10, 2020
WL 5993290 (E.D. Pa. Oct. 9, 2020).

## Discussion

At the outset, we are charged with first ascertaining
whether the Defendant has satisfied the administrative pre-
requisite of exhaustion by having previously presented a request
to the warden of the institution where he is being housed to
bring a motion for sentence modification on his behalf.  The
Government acknowledges that this pre-condition has been
satisfied: "On or about June 12, 2020, the defendant submitted

an unsuccessful request for compassionate release to the warden, asserting that his undiagnosed medical conditions combined with his rehabilitation are grounds for compassionate release." (Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i) at p.8). Thus, we are vested with the ability to now consider Defendant's motion and we turn next to considering whether there are "extraordinary and compelling reasons" to warrant a reduction in Defendant's sentence.

The premise for Andre Cooper's motion for release here is, of course, the ongoing coronavirus pandemic. As we recently observed in our Memorandum Opinion in United States v. Jerrick Limehouse, Crim. A. No. 08-CR-223-1, 2021 U.S. Dist. LEXIS 70730, *10, 2021 WL 1387756 (E.D. Pa. Apr. 13, 2021), it has now been well-established that the novel coronavirus is a highly contagious and dangerous virus that has thus far caused nearly 32 million Americans to contract COVID-19 and some 567,000 fatalities in this country alone. See, e.g., www.covid19 tracker. In Maryland, where Defendant is presently housed, there have been some 437,000 cases to date and over 8,500 deaths from COVID-19. Id. The total inmate population at the Federal Correctional Facility at Cumberland, Maryland ("FCI Cumberland") where Defendant is located, is 1,165. Since the outset of the pandemic, some 340 inmates and 50 staff members have tested

11

positive for the virus, all of whom have recovered.  Thankfully,
no inmates or staff have died and at present there are no
positive inmates and just two positive staff members who are
presently quarantining.  To date, 370 inmates have been fully
vaccinated, as have 50 staff members.  www.bop.gov/coronavirus.

The Bureau of Prisons has recognized that "COVID-19 poses a
unique challenge to the prison system."  United States v. Nunez,
483 F. Supp.3d 280, 283 (E.D. Pa. 2020)(citing *Interim Guidance
on Management of Coronavirus Disease 2019 (COVID-19) in
Correctional and Detention Facilities,* Ctrs. For Disease Control
and Prevention, https://www.cdc.gov/coronavirus/2019-
ncov/community/correction-detention/guidance-correctional-
detention.html (July 20, 2020)).  As a result, it has
implemented an action plan which called for significant
modification in its operations including suspension of outside
visitors, tours and programming, as well as the implementation
of protocols for social distancing, cleaning and hygienic
treatment of its facilities, quarantining and testing of
inmates, staff and necessary outside visitors, and the treatment
of symptomatic inmates, among other things.
http://www.bop.gov/resources/news/20200319_covid19_update.
This action plan has been modified as necessary throughout the
pandemic, and was last updated on November 25, 2020 to still
require the screening and quarantining of new inmates at BOP

12

facilities, screening and testing of existing inmates and
frequent cleaning, although some non-contact visiting and
programming has been resumed so long as visitors are masked and
temperature-screened.  All visits must take place behind
plexiglass barriers and thorough cleaning of all chairs and
surfaces between visiting groups is mandated. Prisoners are
still limited in their movements to avoid gathering in
congregate settings and generally only as necessary to
facilitate thrice-weekly showers, laundry, commissary, telephone
and computer/law library usage, they are still required to
maintain appropriate social distancing as much as practicable,
and telephone calls and teleconferencing with legal counsel
continue to be utilized as much as possible.  With the exception
of necessary medical care, travel between facilities remains
restricted, official staff travel and training remains cancelled
and staff continue to be assigned to the same postings in lieu
of rotation as much as practicable. See,

www.bop.gov/coronavirus/covid19 status.jsp.

        Pursuant to guidance from the Centers for Disease Control,
there are a multitude of medical conditions which may be more
likely to result in severe illness from COVID-19 in adults of
any age.  Included among these conditions are: cancer, chronic
kidney disease, other chronic lung conditions such as COPD,
interstitial lung disease, cystic fibrosis and pulmonary

hypertension, Alzheimer's disease and other types of dementias, diabetes, down syndrome, heart conditions like coronary artery disease, heart failure, cardiomyopathies or hypertension, HIV, having an immunocompromised or weakened immune system, liver disease, obesity or the condition of being overweight[2], pregnancy, sickle cell disease, smoking, history of organ or blood stem cell transplant and stroke or cerebrovascular disease. See, www.cdc.gov. Severe illness is defined to mean "that a person with COVID-19 may need: hospitalization, intensive care, a ventilator to help them breathe, or they may even die." Id.

In this case, it appears from Defendant's medical records that he does fall within the definition of obesity given that his BMI is 31 and he does have a history mild hypertension with his most recent recorded readings being 132/78, 127/86, 134/95, 128/82,  129/93 and 120/83.  He is not on any prescribed medication[3] and it seems that his hypertension is being adequately managed and controlled through diet and exercise and is presently in remission.  He also has a history dating back to

---

[2] Overweight is defined as having a Body Mass Index (BMI) of greater than 25 kg/m but less than 30 kg/m. Obesity is defined as having a BMI of greater than 30 kg/m but less than 40 kg/m and severe obesity occurs with a BMI greater than 40 kg/m.  www.cdc.gov

[3] According to the Government, Mr. Cooper was advised in April 2020 by the prison physician that he had hypertension that that he recommended medication, but the defendant refused to take the recommended medication. (Govt's Response in Opposition to Defendant's Motion to Reduce Sentence, at p. 9).

November, 2019 of recurrent, intermittent chest pain, swelling,
pain and tenderness of the left knee, and myopia or near-
sightedness for which eyeglasses have evidently been prescribed.
Upon presentment of his complaints to the health unit, Mr.
Cooper has had EKGs, full laboratory studies and x-rays
performed in a timely manner, but nothing abnormal was found.
His medical history includes mention of a lipoma of the
skin/subcutaneous tissue in July, 2014 but nothing further.
Indeed, his records suggest that Defendant has been plagued more
by dental problems than anything else for which he appears to
have been regularly treated.  Defendant was also evidently
quarantined for exposure to the coronavirus in December, 2020
but he did not contract COVID-19.  Moreover, Defendant
acknowledges that he was offered but declined to be vaccinated
against COVID-19.  "As the Third Circuit has explained, 'the
mere existence of COVID-19 in a society and the possibility that
it may spread to particular prison alone cannot independently
justify compassionate release, especially considering BOP's
extensive and professional efforts to curtail the virus's
spread.'"  United States v. Weary, Crim. A. No. 19-CR-0482, 2021
U.S. Dist. LEXIS 70724 at *12, 2021 WL 1387757 (E.D. Pa. April
13, 2021)(quoting United States v. Raia, 954 F.3d 594, 597 (3d
Cir. 2020)). This evidence reflects that Defendant's  medical
issues have been well-managed and that he has received timely

15

and appropriate treatment when needed.  We therefore cannot find
that Defendant's medical conditions present such compelling and
extraordinary circumstances as would warrant early,
compassionate release.

Nor do we find Defendant's professed remorse for his
crimes to be justification for his early release either.
Defendant strenuously argues that he should not be held fully
accountable for his actions because he was approximately 16
years of age when he first began selling drugs and that he was a
product of having grown up in a dangerous, crime-ridden
environment, had himself been kidnapped and violently assaulted
and "failed miserably in school," dropping out in the 12th grade.
While this Court recognizes that Defendant had enormous
obstacles and trauma to overcome and truly sympathizes with his
plight, we nevertheless cannot find these circumstances warrant
releasing or reducing Defendant's life sentences for what were
unquestionably heinous, pre-mediated murders of four people and
other crimes. Defendant participated in the planning and
fulfillment of each of those murders -- one of which was of a
cooperating federal witness and one of which was of a young,
teenage boy who begged for his life.  Defendant himself murdered
another individual, who was believed to be a competing drug
dealer.  Defendant has served just 18 years and is now just 41
years of age.  He does not come anywhere close to the age of 70

16

and 30 years of service benchmark articulated in Section 3582(c)(1)(A).

Additionally, while we applaud Defendant's history of exemplary behavior while incarcerated as well as his outstanding record of participation in the educational, employment and rehabilitation programming offered in the correctional facilities where he has been housed, we simply cannot find that this impressive record outweighs the extremely violent, depraved and appalling crimes of which he stands convicted. Defendant may have been just 16 or 17 when he first became associated with the Boyle Street Boys, but he continued that association and the racketeering activities that went with it uninterrupted until he was arrested at age 23. Notwithstanding that more recent research may reveal that brain development in adolescents continues through the mid-20's,[4] Mr. Cooper was one of the principal, senior members of an extremely violent criminal enterprise who was actively engaged in the planning and organization of its operations and the crimes committed in furtherance thereof -- he was not a low-level member or underling.[5] By his own admission, Defense counsel raised the issue of Defendant's relative youth and immaturity during the sentencing phase in what ultimately proved to be a successful

_____

[4] www./sentencingproject.org/publications/the-next-step-ending-excessive-punishment-for-violent-crimes/
[5] According to the Third Superseding Indictment at p.15, the group's leaders of which Defendant was one were known as the "old-heads" and those that acted at their direction were called the "youngboys."

attempt to save him from the death penalty. (Def's Emergency Motion for Compassionate Release/Sentence Reduction, at p. 25) and thus to a large extent, Defendant's age has already militated in his favor insofar as his sentencing is concerned.        In the final analysis, Defendant simply has not made out the extraordinary showing necessary to satisfy the dictates of Section 3582(c)(1)(A). While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered. Perhaps he ultimately will elect to do just that. That is up to him, but inasmuch as it is up to this Court to decide whether Defendant is entitled to early, compassionate release as a consequence of COVID, the motion therefore is denied.

        An order follows.